UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK LECH,<br>　　　Plaintiff<br><br>v.<br><br>BESTFOODS BAKING DISTRIBUTION<br>COMPANY, ARNOLDS FOODS COMPANY,<br>INC., UNILEVER, INC. | : CIVIL ACTION NO.<br>: 3:00CV2303(AHN)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: JULY 16, 2004 |

### MEMORANDUM OF LAW IN SUPPORET OF
### MOTION FOR RELIEF FROM JUDGMENT

Pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 60(b)(1) and 60(b)(6) and Local Rule 41(a), the plaintiff Mark Lech ("Lech") hereby moves for relief from the judgment entered by this court on July 25, 2003 and Order of Dismissal entered by this court on June 27, 2003.

The Court should grant this Motion for Relief from judgment pursuant to Fed. R. Civ. P. 60(b)(1) because the facts and circumstances set forth herein demonstrate mistake, inadvertence, surprise or excusable neglect by Lech's attorney, Ronald Lepine ("Lepine"), which caused the judgment to be entered by the Court. In addition, Lech is bringing this Motion for Relief from Judgment within one year from the entry of judgment by the Court.

368347

In the alternative, if the Court finds that Lech is not entitled to relief under Fed. R. Civ. P. 60(b)(1), the Court should find that Lech is entitled to relief from judgment under Fed. R. Civ. P. 60(b)(6) in that the judgment entered because exceptional circumstances existed which were caused by a truly extraordinary turn of events not covered otherwise within Fed. R. Civ. P. 60(b). As set forth herein, Lech's attorney, Lepine, was suffering from a mental disorder that prevented him from properly representing Lech in this case. When Lepine first began representing Lech in August 2000, Lepine did not manifest any symptoms of his mental illness. However, by March 2003, Lepine's illness caused the Court to enter a dismissal of this case and, ultimately, judgment against Lech. Lech attempted to stay abreast of the progress of the case by regularly contacting Lepine. However, Lepine misinformed Lech as to the status of the case. In addition, as set forth in this Court's decision denying the defendants Motion to Dismiss and Motion for Summary Judgment, the plaintiff has a meritorious claim for damages against the defendants and, therefore, should be given the opportunity to pursue his case to a trier of fact. In addition, Lech has a meritorious claim that the defendants violated the Connecticut Franchise Act. Connecticut General Statutes §42-133e et seq.

In addition to relief under Fed. R. Civ. P. 60(b), the Court should rescind the order pursuant to Local Rule 41(a). Pursuant to Local Rule 41(a), any order entered under this Local Rule "may be suspended, altered, or rescinded by the Court for cause shown." Lech sets forth

herein ample cause for the Court to rescind its order of dismissal entered pursuant to Local Rule 41(a).

I.  **BACKGROUND**

On August, 2000, the defendants terminated Lech's Distribution Agreement. Lech Affidavit at ¶3 dated July 14, 2004 attached hereto as <u>Exhibit A</u> ("Lech Aff."); See Letter dated August 4, 2000 attached hereto as <u>Exhibit B</u>. In August 2000, Lech engaged Lepine to represent him in the pursuing his legal rights against the defendants. Lech Aff., ¶4. Lepine informed Lech that he had filed the Complaint against the defendants in October 2000. Lech. Aff., ¶7. However, pursuant to Court records, Lepine filed the Complaint on December 1, 2000. Lech Aff., ¶8. On March 30, 2001, the defendants filed an Answer and Counterclaim. On June 27, 2001, the defendants moved to dismiss the case because Lepine had failed to respond to the Counterclaim and failed to participate in a conference required by Fed. R. Civ. P. 26(f). On July 18, 2001, Lepine filed responses to the Counterclaim and an Objection to the Motion to Dismiss. The Motion to Dismiss was denied on August 13, 2001.

On September 14, 2001, the Court held a Pretrial Conference wherein the case was referred to Magistrate Fitzsimmons for possible settlement. Absent settlement, jury selection would commence in December 2001.

A settlement did not result from the referral to Magistrate Fitzsimmons and a Pre-Trial Order was issued by the Court on January 17, 2002. On February 8, 2002, the defendants filed their trial exhibits and witness list. A Prefiling Conference Calendar was then held on February 28, 2002 and a Status Conference was held on April 4, 2002. At the Status Conference, the Court allowed the defendants to file a Motion to Dismiss by April 12, 2004.

On April 12, 2002, the defendants filed their Motion to Dismiss and Motion for Summary Judgment. Lepine timely objected to the Motion and the Court denied the Motion on February 4, 2003.

Shortly thereafter, on March 10, 2003, the Court issued a Notice and Order requiring the plaintiff to provide a valid reason for his failure to appear at a March 5, 2003 calendar call and his failure to participate in the framing of a proposed case management plan.

Despite Lepine's previous prosecution of this action, Lepine failed to respond to the Court's Notice and Order and on April 21, 2003 the defendants moved this Court to dismiss this case. The Court granted the Motion, absent objection, on June 27, 2003 and then entered judgment against Lech on July 21, 2003.

From March 2003 through June 2003, Lech was unaware of the Notice and Order, Dismissal or Judgment because Lepine misinformed Lech about the case status. Lech retained Lepine upon the recommendation of other attorneys. Lech Aff., ¶¶14-18. Lech is not an

attorney and has only limited knowledge of legal issues. Lech Aff., ¶5. Lech does not regularly retain attorneys in his everyday life and does not regularly participate in court proceedings. Lech Aff., ¶6.

In October 2000, Lepine informed Lech that he had filed a law suit against Bestfoods Baking Distribution Company, Arnolds Foods Company, Inc. and Unilever, Inc. on his behalf despite the fact that Lepine did not file the law suit until December 2000. Lech Aff., ¶¶7-8. Lech kept in regular contact with Lepine throughout the course of the litigation process until June 21, 2004. Lech Aff., ¶10. Lepine kept Lech informed about the progress of the motion to dismiss and motion for summary judgment filed by the defendants. Throughout this process, Lech gained confidence in Lepine because of the manner in which the Court addressed Lepine and was heightened by the denial of the defendants' motion in February 2003. Lech Aff., ¶¶11-12.

Lepine never informed Lech that he failed to appear at the call of the calendar on March 5, 2003 about the Notice and Order issued by the Court on March 10, 2003 requiring Lepine to provide a valid reason for not appearing at the call of the calendar and for not participating in the framing of a proposed case management plan, that the defendants moved to dismiss the case on April 16, 2003, that Lepine did not file an objection to the defendant's motion and that on June 27, 2003, the Court issued an order dismissing this case and that on July

25, 2003, the Court issued a judgment against Lech. Lech Aff., ¶¶13-18. In addition, Lepine did not inform Lech that on November 21, 2003, he moved to set aside the judgment which the court denied on January 7, 2004. Lech Aff., ¶13-18.

Instead, on May 21, 2001, Lepine informed Lech that he had filed a Motion to Compel, and a Motion for Default which he had not filed. Lech Aff., ¶20; See Motion to Compel attached hereto as Exhibit C; Motion for Default attached hereto as Exhibit D. In addition, Lepine informed Lech that he filed a Motion to Restrain Sale dated February 24, 2002. Lech Aff., ¶21; See Motion to Restrain Sale attached hereto as Exhibit E. In April 2003 (after the Notice and Order), Lepine forwarded Lech discovery requests from the defendants dated in March 2003. Lepine led Lech to believe that the discovery requests were due by the end of April 2003 and Lech provided responses to the discovery requests. Lech Aff., ¶19. In April 2003, Lepine informed Lech that he had sent discovery requests to the defendants and that in June 2003, that he had not received discovery responses from the defendants and that he would file a Motion to Compel compliance. Lech Aff., ¶¶22-23.

In September 2003, Lepine informed Lech that he would file a motion for judgment against the defendants for failure to comply with the discovery requests. Lepine sent me a copy of this motion in September 2003. Lech Aff., ¶24. In December 2003, Lepine informed Lech that the court had scheduled a status conference for February 2004. Lech Aff., ¶25. In February

368347                                                          6

2004, Lepine informed Lech that the court had entered judgment in his favor because the defendants failed to comply with the discovery requests but that the court would consider reopening the judgment within 45 days if the defendants complied with the discovery requests. Lech Aff., ¶26.

In April 2004, Lepine assured Lech that he had received judgment on his behalf and that a hearing in damages would be scheduled by the Court. Lech Aff., ¶27. In May 2004, Lepine informed Lech that a hearing in damages had been scheduled by the Court for August 2004. However, during the months of May and June 2004, Lepine informed Lech that his mother was ill and he would be unreachable during that timeframe. Lech Aff., ¶¶28-29.

On June 30, 2004, Lech called Lepine's office and reached a message which informed Lech of Lepine's suspension from the practice of law and informing the callers to contact Attorney Sabatini. Lech Aff., ¶30. On June 30, 2004, Lech spoke with Attorney Vincent Sabatini and was informed that the case was not being handled by Attorney Sabatini because the judgment had entered on the matter in July 2003. Lech Aff., ¶31. Attorney Sabatini's conversation with Lech on June 30, 2004 was the first indication that Lech received about his case being dismissed and judgment being entered against him. Lech Aff., ¶32. Lech immediately hired Attorney Sabatini to begin protecting his rights and thereafter, was referred to his current counsel. Lech Aff., ¶33.

Recently, Lech has learned that in 2002, Lepine began to experience stress that prevented him from practicing law in a competent manner and that affected his ability to perform his duties as an attorney. Affidavit of Ronald Lepine dated July 14, 2004 ("Lepine Aff.") at ¶¶16-18, attached hereto as Exhibit F. Lepine's mental stress caused him to miss court deadlines, fail to appear for court dates and misinform clients about the status of cases. Lepine Aff., ¶19. Lepine is currently awaiting intake at the Veterans Administration in West Haven. Lepine Aff., ¶18.

## II.     LEGAL STANDARD

Lech is now moving this Court for relief from the judgment because of the errors committed by Lepine. Concededly, "the question of the extent to which the error of counsel may constitute a basis for Rule 60(b) relief is somewhat vexing." United States v. Cirami, 535 F.2d 736, 739 (2d Cir. 1976) ("Cirami I"). The Second Circuit has consistently "refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or of the rules of the court, or hi inability to efficiently manage his caseload." Id. However, "[a]t the same time there is authority for the proposition that where the conduct of counsel is grossly negligent, there may be a basis for relief under Rule 60(b)(6)." Id., at 740. When a movant brings the motion for relief within one year after the judgment, the distinction between bringing the motion under subsection 1 or subsection 6 of Rule 60 becomes irrelevant. Id.

368347                                              8

In Cerami I, the Circuit Court, for the first time, grappled with proposition that gross negligence of counsel warrants the relief sought. Id. However, the Cerami I court never directly decided this proposition of law. Instead, the Court stated that "the record before us fails to establish any gross negligence or misleading of the appellants by counsel and is bereft of any indication of client diligence." Id., at 741.

The movants in Cerami I then filed a second motion with the District Court pursuant to Fed. R. Civ. P. 60(b)(6). The District Court denied the motion because it believed that it was not authorized to consider it. United States v. Cerami, 563 F.2d 26, 31-32 (2d Cir. 1977) ("Cerami II"). The Circuit Court first stated that the movants can file a second motion for relief from the judgment and the District Court can consider the second motion because the papers and contention submitted in the second motion were not before the Court in the first motion. Id., at 33. The Circuit Court then set forth the current standard for granting a motion under Fed. R. Civ. P. 60(b)(6). The Circuit Court stated that a motion for relief should be granted where the movant sets forth an extraordinary situation which cannot fairly or logically be classified as mere neglect on the movant's part. Id., at 35. The Circuit Court provided as an example the case of L.P. Steuart, Inc. v. Matthews, 329 F.2d 234 (D.C. Cir. 1964) wherein a motion was granted "whose former counsel filed an affidavit that he had been beset with personal problems, made affidavit that he [movant] and others in his behalf, made numerous inquiries of his former counsel who

refused to answer such inquiries and assured [movant] from time to time that the case was proceeding and that settlement of it would be made soon." Id.

In addition, "it does not require medical expertise to know that when a competent veteran attorney suddenly fails to perform, and covers up his non-performance by lying to his clients . . ., something is obviously wrong with him. There is no reason to demand medical proof when the facts speak for themselves." In re Benhil Shirt Shops, Inc., 87 B.R. 275, 278 (S.D.N.Y 1988). "The crucial issue is not whether former counsel was mentally or physically capable of performing some of the tasks required in [his] practice, or even whether [he] actually discharged some of [his] professional obligations during the relevant time period; less than total disability may constitute an extraordinary medical condition under Rule 60(b)(6)." Nurani v. Marissa Limited, 151 F.R.D. 32, 35 (S.D.N.Y. 1993).

Further, there is not reason to think that an unsophisticated client possesses the sophistication to understand, much less monitor, their attorney's compliance with pre-trial civil discovery orders. Ituarte v. Chevrolet Motor Division, 1989 U.S. Dist. LEXIS 1146 (E.D.N.Y 1989) (attached hereto as Exhibit G).

Finally, the Court must examine whether the movant has a meritorious case. Cerami II, at 35.

### III. **DISCUSSION**

The facts of the instant case fall squarely within the Cerami II parameters. Even though Lech is an unsophisticated client, he consistently contacted Lepine to inquire about the status of his case and the progress of the motions. In addition, Lech has a meritorious claim against the defendants.

As set forth in the Lech Affidavit and the Lepine Affidavit, Lech continuously made inquiry about the status of his case from Lepine. Lepine consistently misinformed Lech about the status of the case so that Lech would not know nor have reason to inquire about the true nature of the proceedings. Further, Lepine began suffering from a mental illness in 2002 that prevented him from competently practicing law. The mental illness caused him to miss court dates, misinform clients about the status of cases and miss court deadlines. These symptoms of Lepine's mental illness stands as the basis for the Court's dismissal and judgment against Lech. Under Cerami II and the District Court cases that followed, the actions by Lepine amount to an extraordinary situation which cannot fairly or logically be classified as mere neglect on the movant's part.

In addition, Lech has set forth a meritorious claim against the defendants. First, the breach of contract has already survived a motion to dismiss and motion for summary judgment. In fact, the Court states in the decision on the motion to dismiss that issues of fact remain as to

whether the defendant obtained the best price for Lech's route and whether Lech received fair market value for his route. Lech is entitled to an adjudication of this issue.

Further, upon the granting of this motion, Lech will immediately request that his Complaint be amended to allege a violation of the Connecticut Franchise Act, Connecticut General Statutes ("C.G.S.") §42-133e et seq. Under the Connecticut Franchise Act, Lech will be classified as a franchisee, the defendants will be classified as a franchisor and the route will be classified as franchise. Petereit v. S.B. Thomas, 853 F. Supp. 55, 60-63 (D.Conn. 1993); aff'd in relevant part, 63 F.3d 1169, 1181 (2d Cir. 1995); cert. denied, 517 U.S. 1119 (1996). The defendants' delivery system is the same as that described in Petereit. Lech Aff., ¶35. As a franchise, the franchisor was required to provide Lech at least 60 days notice of the termination of the franchise. C.G.S. §42-133f(a). The defendants only gave Lech no notice of the termination of the franchise. Lech Aff., ¶3; See Letter dated July 18, 2000 and Letter dated August 4, 2000 attached hereto as Exhibit B. This violation is actionable pursuant to C.G.S. §42-133g. The remedies available to Lech for this violation include the restoration of his route and lost profits for the time period between the termination and the restoration of the route.

In addition, the defendants must show good cause if they decide to issue a statutorily compliant termination letter to Lech. C.G.S. §42-133f(a). The defendants will be unable to show good cause for the termination. According to the defendants, Lech's agreement was

terminated because he failed to properly service one location along his route and was, therefore, precluded from servicing the route. Lech Aff. ¶36. However, Lech has a meritorious defense to this factual allegation in that Lech will be able to show that he properly serviced the location and that the store owner has a pattern and practice of precluding drivers from the location. Lech Aff., ¶37. In addition, even if the defendants prove their claim that Lech failed to properly service this one location, it does not arise to good cause because the failure to service one store location is not material and the amount of product sold to the one location was not material to Lech's route. Lech Aff., ¶38.

## IV.    CONCLUSION

Overall, Lech has set forth all of the requirements for having the relief from the judgment of this court. Under Cerami II and the District Court cases that followed, the actions by Lepine amount to an extraordinary situation which cannot fairly or logically be classified as mere neglect on the movant's part. Further, Lech has a meritorious claim that, under competent counsel, will include a claim for a violation of the Connecticut Franchise Act. Therefore, Lech moves that this court grant relief from the judgment entered on July 21, 2003.

Respectfully submitted,

MARK LECH

By: *[signature]*
    Brad N. Mondschein
    Fed. Bar No. ct13800
    Updike, Kelly & Spellacy, P.C.
    One State Street, 24th Floor
    Hartford, Connecticut  06123
    Telephone:  (860) 548-2600
    Facsimile:  (860) 548-2680
    Email:  bmondschein@uks.com

368347

## CERTIFICATION

A copy of the foregoing has been mailed by first class mail, postage prepaid this 16th day of July, 2004, to all counsel of record as follows:

Robert Horowitz, Esq.
Greenberg Traurig, LLP
200 Park Avenue
New York, NY  10166

By: _____
BRAD N. MONDSCHEIN, ESQ.
Updike, Kelly & Spellacy, P.C.