## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

———————————————————— x

MARK LECH                         :

        :

       Plaintiff,          :     Civil Action No.: 300CV2303 (AHN)

v.                       :

        :

BESTFOODS BAKING DISTRIBUTION  :

COMPANY

        :

ARNOLDS FOODS COMPANY, INC.    :

        :

UNILEVER, INC.                :

        :

       Defendants.       :

———————————————————— x
———————————————————— x

BESTFOODS BAKING DISTRIBUTION  :

COMPANY

        :

BESTFOODS BAKING CO., INC.,     :

        :

       Counterclaim Plaintiffs,  :     August 9, 2004

        :

        :

v.                       :

        :

MARK LECH,               :

        :

       Counterclaim Defendant.  :

———————————————————— x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT

Preliminary Statement

Defendants Bestfoods Baking Distribution Company, Arnolds Food Company, Inc., and Unilever, Inc.[1] (collectively, "George Weston") submit this memorandum of law in opposition to the motion for relief from judgment filed by plaintiff Mark Lech ("Lech"). While Mr. Lech clearly is a victim of a most unfortunate series of events, his motion should be denied and he should pursue whatever claim, if any, he may have against his former attorney, Ronald Lepine ("Lepine").

Lech acknowledges that in order to prevail he must establish "extraordinary circumstances." He relies entirely on *U.S. v. Cirami*, 563 F.2d 26 (2d Cir. 1977) ("*Cirami II*"), a case in which defendants' counsel, who had allowed summary judgment to be entered against his clients without opposition, "had not, in fact been representing them." *Id.* at 34. In fact, defendants' counsel in *Cirami* did nothing to represent his client once the government filed its motion for summary judgment. That is not the case here. While Lepine allowed judgment to enter against his client, he promptly filed a motion on behalf of Lech for relief from that judgment. In addition, Lepine continued to communicate with George Weston's counsel with respect to the proceeds from the sale of Lech's distribution rights.

Lech also acknowledges that he must demonstrate a meritorious claim in order to obtain relief from the judgment. He relies on the existing claim in his complaint – breach of contract –

---

[1]    Bestfoods Baking Distribution Company and Arnolds Food Company, Inc. were subsidiaries of Bestfoods Baking Co., Inc., which was a subsidiary of Bestfoods. Unilever United States, Inc. (s/h/a Unilever, Inc.) acquired Bestfoods in October 2000. Thereafter, Bestfoods sold its baking business. Upon that sale, Bestfoods Baking Co., Inc. changed its name to George Weston Bakeries Inc. and Bestfoods Baking Distribution Company changed its name to George Weston Bakeries Distribution Inc.

2

and a proposed claim for violation of the Connecticut Franchise Act. Neither claim has merit and indeed the latter, a new claim, is time barred.

First, in connection with the sale of his Distribution Rights, Lech released George Weston from the claims he seeks to reassert now.

Second, even if George Weston did not have "good cause" to terminate Lech's distribution agreement and require him to sell his distribution rights, the measure of damages would be the fair market value of his distribution rights. Lech recovered that amount when, in accordance with the terms of the distribution agreement, George Weston sold Lech's distribution rights for his account to a third party for 10% more than Lech had paid only a couple of months before George Weston terminated his distribution agreement. Moreover, the distribution agreement precludes liability for "consequential, incidental, indirect or special damages, including lost profits and punitive damages."

Third, Lech's new proposed claim, i.e., violation of the Connecticut Franchise Act for George Weston's alleged failure to have given Lech the requisite sixty (60) days notice of termination also has no merit. Lech in fact had ninety (90) days notice of the termination of his distribution rights, thirty (30) days more than was required by the Connecticut Franchise Act, during which time he could have but did not seek to enjoin the termination. Moreover, the claim would be barred by the three (3) year statute of limitations in any event.

Fourth, Lech's proposed claim seeking to restore his Distribution Rights would be barred by laches. During Lech's four (4) years of delay, the Distribution Rights were sold to a third party who has been operating the business since he acquired it.

Finally, injunctive relief was and is not now appropriate where, as here, monetary damages are adequate to compensate Lech.

For all of these reasons, Lech's motion for relief from the final judgment entered in this action should be denied in all respects.

### Factual Background

In May 2000, Lech purchased the exclusive rights to distribute Arnold brand baked goods in a portion of Connecticut ("Distribution Rights"), along with related assets, for $65,000. He entered into a distribution agreement with Bestfoods Baking, an affiliate of Arnold Foods Company, Inc. ("Distribution Agreement"), which set forth the rights and obligations of the parties with respect to the distribution of Arnold brand products. A copy of the Distribution Agreement is attached hereto as Exhibit A.

After only two months, Lech failed and refused to service at least one account and another account refused to permit him to service its store because he was failing to provide proper and satisfactory service. Each of these service deficiencies is described in a "Notice of Breach of Distribution Agreement," dated July 10, 2000 and July 18, 2000, respectively. Copies of the Notices are attached hereto as Exhibits B and C.

Despite having been advised that he was in breach of his Distribution Agreement and had three (3) days in which to cure, Lech failed to cure and, by letter dated August 4, 2000, a copy of which is attached hereto as Exhibit D, Lech was advised that his Distribution Agreement was terminated. In accordance with the Distribution Agreement, he was given ninety (90) days in which to sell his Distribution Rights after which time George Weston would have the right to sell

4

the Distribution Rights on his behalf. Until the Distribution Rights were sold, George Weston operated Lech's distributorship for his account. *See* Exhibit A §8.4 and §§6.3, 6.4.

Following the termination of his Distribution Agreement, Lech made no effort to sell his Distribution Rights. Therefore, in accordance with the Section 8.4 of the Distribution Agreement, George Weston attempted to sell his Distribution Rights on his behalf. In December 2000, George Weston presented Lech with a buyer who was willing to pay $70,000. Lech neither accepted nor rejected the offer.

More than one year later, George Weston found a new purchaser who offered to purchase Lech's Distribution Rights and related assets for $71,158.71. Again, Lech neither accepted nor rejected the offer. George Weston proceeded with the sale on Lech's behalf and, pursuant to the power of attorney granted in Section 11.6 of the Distribution Agreement, executed all the closing documents, including the general release required by Section 6.4 of the Distribution Agreement. George Weston then delivered to Lech the proceeds from the sale less certain deductions, including the expenses it had incurred in servicing the route on Lech's behalf since August 2000 and $11,322.67 that Lech had misappropriated from George Weston following the termination of his Distribution Agreement.

## Procedural Background

Lepine represented Lech and participated in all aspects of the litigation through the calendar call on February 13, 2003. He did not appear at the March 5, 2003 conference only because he arrived at the courthouse late.

5

On March 11, 2003, this Court issued a Notice and Order providing notice to Lech that "the court shall impose such sanctions as are authorized by law, including dismissal of this action if, within thirty (30) days, the plaintiff (1) fails to provide a valid reason for his failure to appear at the March 5, 2003, call of the calendar, and (2) fails to participate in the framing of a proposed case management plan under Fed. R. Civ. P. 26(f)." Lepine did nothing in response.

George Weston moved to dismiss the action based on Lech's failure to comply with the March 11, 2003 Notice and Order. The Court granted the motion "absent objection" on June 27, 2003. Judgment was entered on July 27, 2003. On November 21, 2003, Lepine filed a motion to set aside the judgment, arguing that he complied with the Notice and Order. The motion was denied on January 7, 2004.

## ARGUMENT

### I.

### This Case Does Not Present The Exceptional Circumstances
### Necessary to Justify Relief From The Final Judgment

The Second Circuit has "consistently refused to relieve a client of the burdens of a final judgment entered against him due to mistake or omission of his attorney by reason of the latter's ignorance of the law or of the rules of court, or his inability to manage his caseload." *United States v. Cirami,* 535 F.2d 736, 739 (2d. Cir. 1976) ("*Cirami I*"). In cases where the judgment results from the attorney's inexcusable neglect, the client is charged with the action or omission of its attorney, and there is no basis to obtain relief from the judgment. A few courts, including the Second Circuit in *Cirami II* , have adopted a narrow exception to the rule when the attorney's

6

conduct is so egregious as to constitute an abandonment of the client. *Panzino v. City of Phoenix,* 196 Ariz. 442, 999 P.2d 198 (2000). "The exception is premised upon the concept [that] the attorney's conduct, *in effect,* obliterates the existence of the attorney-client relationship, and for this reason his negligence should not be imputed to the client." *Daley v. County of Butte,* 227 Cal.App.2d 380, 38 Cal. Rptr. 693, 700 (1964).

The exception has been criticized as illogical, "in that the opponent is made to bear the brunt of unacceptable conduct by an attorney while the party that hired the attorney obtains relief." 12 James Moore et al., *Moores' Federal Practice,* § 60.48[4][b] (3d ed. 1997) (internal citations omitted). The exception has also been criticized as violating traditional agency rules in that, notwithstanding the termination of the attorney's authority, the attorney would still have apparent authority as to third parties, i.e., adverse litigants:

> Although abandonment by a lawyer may afford his client – the injured principal – the right to bring an action against the lawyer, it does not affect the client's responsibility for the actions of his lawyer. Without addressing the merits of her action, we note only that under agency principles, Panzino's right of action now lies against her former attorney, not against the original defendants.

*Panzino,* 196 Ariz. At 447, 999 P.2d at 203.

In *Cirami II,* the Second Circuit held that the exception would apply where the attorney had, in fact, stopped representing his clients, and the plaintiff was aware of certain facts that put it on notice that the attorney may no longer have been representing his clients. *Cirami II,* 563 F.2d at 34. There, the defendants' attorney was representing his clients until the government filed a motion for summary judgment. The attorney defaulted on the motion. The judge gave him an additional two weeks to file a response but he again defaulted. On two occasions, the

7

judge's clerk attempted to contact the attorney to inquire as to why he defaulted but could not get an answer. *Id.* at 31. The court found "disturbing" the fact that plaintiff knew that the judge was not able to reach Ciramis' attorney, suggesting that the plaintiff was on notice that the attorney may no longer have been representing them. The Ciramis' attorney did nothing further to represent them in the action.[2]

Here, by contrast, Lepine represented his client both before *and after* the entry of the judgment dismissing the case. Lepine participated in all aspects of the litigation through the calendar call on February 13, 2003. He did not appear at the March 5, 2003 conference because he arrived at the courthouse late, not because of any mental disorder that prevented him from attending.

Lech states that in his Affidavit that in April 2003, Lepine forwarded him discovery requests that had been served by George Weston in March 2003 and told him the responses were due "by the end of April 2003." Lech Aff. ¶19. That is hardly indicative of an attorney who has stopped representing his client.

While Lepine did not oppose George Weston's motion to dismiss for failure to prosecute, he moved to set aside the judgment soon after the judgment was entered. This to is inconsistent with any contention that Lepine stopped representing Lech.

---

[2]      On remand, the court denied the motion for relief from judgment because the evidentiary hearing demonstrated, among other things, that the attorney had not, in fact, stopped representing his client and the defendants failed to establish that any misconduct or mental disorder by the attorney was the cause of there being no opposition to the government's motion for summary judgment. *U.S. v. Cirami,* 92 F.R.D. 483, 484-85 (E.D.N.Y. 1981). That is  the case here as well.

Lepine also continued to represent Lech with respect to the sale of Lech's Distribution Rights. In September 2003, George Weston forwarded to Lepine, <u>with a copy to Lech</u>, a cover letter enclosing the net proceeds from the sale of Lech's Distribution Rights. In January, 2004, Lepine contacted George Weston's counsel and asked for a copy of the closing statement, which George Weston then forwarded to Lepine on January 9, 2004.

In support of his motion for relief from judgment, Lech has submitted an affidavit from Lepine in an effort to show that Lepine's failure to oppose George Weston's motion to dismiss was, as in the case of Ciramis' attorney, the result of "a mental disorder which induced him both to neglect his duties and to assure his client that he was attending to them." *Id.* at 34. The fact that Lepine filed a timely motion to set aside the judgment soon after it was entered and communicated with George Weston with respect to the sale of Lech's Distribution Rights belies Lech's claim that Lepine's failure to oppose the motion was attributable to a mental disorder.

Lepine states in his affidavit that "[b]eginning in 2002, [he] began to experience stress that prevented [him] from practicing law in a competent manner and that affected [his] ability to perform [his] duties as an attorney." Lepine Aff. ¶16. He states further that his "mental stress caused [him] to miss court deadlines, fail to appear for court dates and misinform clients about the status of cases." *Id.* at 17.

In Lech's affidavit, on the other hand, Lech makes it clear that Lepine's conduct was really no different "beginning in 2002" than it was before. In the only statement he makes with respect to his interaction with Lepine before 2002, Lech states that, in October 2000, Lepine misinformed Lech as to when he filed the complaint and, despite repeated requests, Lepine did

not provide him with a copy of the complaint until June 2001, nine months after Lepine told him it had been filed. (Lech Aff. ¶¶7-9.)

Indeed, as is clear from the Decisions of the reviewing committee of the Statewide Grievance Committee in five grievance complaints filed against Lepine, copies of which are attached hereto as Exhibit F, Lepine's misconduct dated back to before 2000. In none of those decisions, several of which followed hearings in 2002 and 2003, is there any indication that Lepine offered a "mental disorder" as an explanation for his failure to properly represent his client.

A Superior Court hearing on one of the grievance complaints was held on April 15, 2003. In that decision, *Statewide Grievance Committee v. Ronald Lepine,* 2003 Conn. Super. LEXIS 2360 (July 25, 2003), a copy of which is attached hereto as Exhibit G, the Court considered Lepine's mental state and found simply that it was "largely negligent." There is no indication that he attributed his failure to properly represent his client to any "mental disorder."

Under the circumstances, Lech should not be able to avoid his freely selected attorney's negligence:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney. (citation omitted.)

*Link v. Wabash Railroad Co.,* 370 U.S. 626, 633 (1962)

II.

Lech Does Not Have A Meritorious Claim

To obtain relief under Fed. R. Civ. P. 60(b)(6), Lech must establish that he has a meritorious claim. *Advanced Portfolio Technologies, Inc. v Advanced Porfolio Technologies Ltd,* 2002 WL 562650 at *4 (S.D.N.Y. April 15, 2002.)

A.     Release

Because Lech failed to take any action with respect to the sale of his Distribution Rights, in accordance with Section 8.4 of the Distribution Agreement, George Weston sold the Distribution Rights for Lech's account and executed the closing documents on Lech's behalf pursuant to the power of attorney Lech granted in Section 11.6 of the Distribution Agreement. Among the closing documents is a general release which Section 6.4 requires the seller to execute upon sale. A copy of the general release, executed by George Weston on Lech's behalf, is attached hereto as Exhibit E. That release covers the claims that Lech seeks to assert herein.

B.     Breach of Contract

Lech's complaint contains a single claim for breach of the Distribution Agreement based George Weston's termination of the Agreement allegedly "without cause." If Lech were to prevail on the claim, his damages would be measured by the fair market value of his Distribution Rights West Haven Sound Dev. Corp. v. West Haven, 201 Conn. 305, 327-329, 514 A.2d 734, 746 (1986). In May 2000, Lech acquired the Distribution Rights for $65,000. Only a few months later, George Weston found an individual who was willing to pay Lech $70,000 for those rights. Finally, pursuant to its obligations in the Distribution Agreement, George Weston sold

11

Lech's Distribution Rights in an arm's length transaction to a third party for approximately $70,500 and delivered the net proceeds to Lech. Clearly, Lech already received the fair market value of his Distribution Rights – the compensatory damages to which he would be entitled if he prevailed on his breach of contract claim. The Distribution Agreement precludes liability for "consequential, incidental, indirect or special damages, including lost profits and punitive damages."[3]

C.    Connecticut Franchise Act

Lech states that if this motion is granted he will seek leave to amend his complaint to assert, for the first time in this case, a claim under the Connecticut Franchise Act for George Weston's alleged failure to provide Lech with sixty (60) days notice of termination required under the statute. According to Lech, the remedies available to him would be restoration of his distributorship and lost profits for the time period between the termination and the restoration.

Lech is confusing the Distribution Rights, which he owned, and the Distribution Agreement, which set forth the terms and conditions under which George Weston would supply him with product for distribution and he would distribute the product. After multiple failures to properly service his accounts in the two months following his acquisition of his Distribution Rights, receipt of a notice of termination with respect to the last such failure unless such failure was cured within three (3) days, and his failure to cure, George Weston properly terminated his

---

[3]    This Court's previous denial of George Weston's motion to dismiss or, in the alternative for summary judgment, does not require a finding that Lech has a meritorious cause of action. On the motion to dismiss, the Court was required to accept Lech's allegations as true, and on the motion for summary judgment, it had no discretion to resolve any disputed issues of fact. Here, the Court must be persuaded that Lech has a sufficiently meritorious cause of action to warrant obtaining relief from the judgment. *See SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).

Distribution Agreement.  In accordance with the Distribution Agreement, Lech had the right to retain his Distribution Rights for at least ninety (90) days, during which time (and thereafter until his Distribution Rights were sold) George Weston operated Lech's distributorship for his account.  Thus, Lech had ninety (90) days written notice of termination of his Distribution Rights, thirty (30) days more than the notice required by the Act, during which time he could have moved for injunctive relief if he so chose.  He did not move for injunctive relief during those ninety (90) days or at anytime thereafter.  The notice clearly complied with the requirements of the Connecticut Franchise Act.

Moreover, the notice of termination was delivered more than  four (4) years go, so any claim that the notice failed to comply with the requirements of the Connecticut Franchise Act would be barred by the three (3) year statute of limitations applicable to claims under the Act.

D.     <u>Laches</u>

Lech is seeking to reopen the case in order to restore his Distribution Rights.  Such relief would be inappropriate because money damages would be adequate.  Moreover, in the four (4) years that have passed since the Distribution Agreement was terminated, circumstances have changed such that restoration of his Distribution Rights is no longer possible.  In particular, the Distribution Rights were sold to a third party who, after acquiring those rights, has been operating the business.  Lech's claim for equitable relief would be barred by laches.

Conclusion

Lech's motion for relief from judgment should be denied.  Lech should be charged with Lepine's negligence in failing to oppose George Weston's motion to dismiss because Lepine

13

never stopped representing Lech in this action and, in fact, moved to reopen that judgment.

Moreover, Lech's claims are not meritorious.

GREENBERG TRAURIG, LLP

By: _____

Robert A. Horowitz (ct 05375)
885 Park Avenue
New York, NY  10022
Tel.: (212) 801-2194
Fax: (212) 224-6114

## **CERTIFICATION**

I hereby certify that a copy of the foregoing has been served by facsimile transmission and first class mail postage prepaid this 12th day of August, 2004 upon the following counsel of record:

Brad N. Mondschein, Esq.
Updike, Kelly & Spellacy, P.C.
One State Street  24th Floor
Hartford, CT  06123
Facsimile #:  860-548-2680

Robert A. Horowitz  (ct 05375)